

NUMBER 13-12-00782-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

| | |
|---|---|
| MICHELE MARIE WERNECKE, INDIVIDUALLY AND AS PARENT, GUARDIAN AND/OR NEXT FRIEND OF JO. EW., A MINOR AND JOSHUA EDWARD WERNECKE, | **Appellants,** |
| **v.** | |
| W-BAR RANCHES, LTD., E&M RANCHES, L.T.D., AND 3JKC INVESTMENTS, LTD., | **Appellees.** |

**On appeal from the 94th District Court of
Nueces County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Perkes
Memorandum Opinion by Justice Garza**

This is an appeal from a summary judgment granted in a declaratory judgment

action. Appellee limited partnerships W-Bar Ranches, Ltd., E&M Ranches, Ltd., and 3JKC Investments, Ltd. ("W-Bar," "E&M," and "3JKC," respectively), sought a declaration that the partnership agreements governing those entities should be rescinded as to Joshua Edward Wernecke,[1] a minor who was named in the agreements as a limited partner. The trial court granted summary judgment in favor of the partnerships on the basis of unilateral mistake. Appellants Joshua and his mother Michele Marie Wernecke, individually and as parent, guardian and/or next friend of Joshua, now challenge that ruling. We affirm.

## I. BACKGROUND

Michele and Edward Wernecke were married in 1990. Five children were born during the marriage, including Joshua, born on January 4, 2000. Edward created the three partnerships over the next ten years. The partnership property consists of farming and ranching operations owned or purchased by Edward, as well as a life estate in certain real property inherited by Edward from his parents, with a remainder to Edward's children. Edward drafted partnership agreements for each of the three entities. According to Edward, the purpose of setting up the partnerships was to protect the land and agricultural operations for himself, for his wife, and for his children, grandchildren and descendants.

---

[1] The parties refer to Joshua in their briefs as "Jo.E.W." However, this is not a suit affecting the parent-child relationship, a parental-rights termination case, or a juvenile delinquency case. *Cf.* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2011) (stating that, in a suit affecting the parent-child relationship, "[o]n the motion of the parties or on the court's own motion, the appellate court in its opinion may identify the parties by fictitious names or by their initials only"); TEX. R. APP. P. 9.8(b)(2) (providing that, in an opinion in a parental-rights termination case, we must "use an alias to refer to a minor, and if necessary to protect the minor's identity, to the minor's parent or other family member"); TEX. R. APP. P. 9.8(c)(2) (providing that, in an opinion in a juvenile proceeding under title 3 of the family code, we must "use an alias to refer to a minor and to the minor's parent or other family member"). The parties have not requested that this Court refer to Joshua only by his initials in our opinion, and we see no reason or authority to do so under the applicable statute or rules.

2

Each of the partnership agreements named Joshua as an original limited partner.[2] In 2010, Edward and Michele divorced. During the divorce proceedings, it was revealed that Joshua is not, in fact, Edward's biological child. As a result, Edward executed amendments to the partnership agreements removing Michele and Joshua as partners.

Subsequently, appellants sent a demand seeking the fair value of Joshua's interest in the partnerships. *See* TEX. BUS. ORGS. CODE ANN. § 153.111 (West 2011) ("Except as otherwise provided by Section 153.210 or the partnership agreement, on withdrawal a withdrawing limited partner is entitled to receive, not later than a reasonable time after withdrawal, the fair value of that limited partner's interest in the limited partnership as of the date of withdrawal."). In response, the partnerships filed suit seeking a declaration that the partnership agreements are rescinded as to Joshua. Appellants answered the suit by generally denying the partnerships' allegations and asserting the affirmative defenses of waiver and estoppel. Appellants also filed a counterclaim for breach of the partnership agreements, demand for an accounting, and request for determination of redemptive terms. *See id.*

The partnerships filed a traditional motion for summary judgment based on unilateral mistake, claiming that Edward was under the mistaken belief that Joshua was his biological son when he included him as a limited partner. According to an affidavit by Edward, he named Joshua as a limited partner in the agreements only because he mistakenly believed that Joshua was his biological son; and he was "shocked" when he

---

[2] Edward and Michele were included as general partners in the W-Bar partnership agreement. Edward was named as both a general and limited partner in E&M, while Michele was named as a limited partner. The 3JKC agreement provides that Edward is a limited partner and excludes Michele entirely.

3

learned, after Michele filed for divorce in 2010, that Joshua was not biologically related to him. The partnerships' motion also stated that, because the partnership agreements "must be rescinded as to [Joshua]," he and Michele must take nothing by their counterclaims.

In their response to the partnerships' summary judgment motion, appellants urged that summary judgment would be improper because there is a fact issue regarding whether the provisions in the partnership agreements naming Joshua as a partner were material. *See, e.g., James T. Taylor & Son, Inc. v. Arlington Indep. Sch. Dist.*, 160 Tex. 617, 620 (1960) (noting that, in order to obtain equitable rescission of a contract by virtue of unilateral mistake, it must be shown that the mistake, among other things, related to a material feature of the contract). In support of this argument, and in support of their waiver and estoppel affirmative defenses, appellants pointed to the partnership agreements themselves, in which individuals other than Joshua who are not biological children of Edward are named as limited partners.

The trial court granted the partnerships' motion, declaring the agreements rescinded as to Joshua and ordering that Joshua and Michele take nothing by their counterclaims. Joshua and Michele filed a motion for reconsideration, which was denied. This appeal ensued.

## II. DISCUSSION

### A. Standard of Review

In a traditional motion for summary judgment, the movant has the burden to establish that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). If the movant meets its burden, the burden

4

shifts to the non-movant to produce summary judgment evidence that raises a fact issue. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222 (Tex. 1999).

We review the granting of a traditional motion for summary judgment de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We review the evidence presented in the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Id.*

When a defendant moves for summary judgment based on an affirmative defense, such as unilateral mistake, the defendant, as movant, bears the burden of conclusively proving each essential element of that defense. *Fed. Deposit Ins. Corp. v. Lenk*, 361 S.W.3d 602, 609 (Tex. 2012); *Velsicol Chem. Corp. v. Winograd*, 956 S.W.2d 529, 530 (Tex. 1997) (per curiam). A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

B.     Applicable Law

A court may set aside a contract based on unilateral mistake if a party shows that: (1) the mistake is of so great a consequence that to enforce the contract would be unconscionable; (2) the mistake relates to a material feature of the contract; (3) the mistake occurred despite ordinary care; and (4) setting aside the contract does not prejudice the other party except for the loss of the bargain. *James T. Taylor & Son*, 160 Tex. at 620; *Toler v. Sanders*, 371 S.W.3d 477, 481–82 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *Welkener v. Welkener*, 71 S.W.3d 364, 366 (Tex. App.—Corpus Christi

5

2001, no pet.).

On appeal, appellants cite the 1973 Texas Supreme Court case of *Johnson v. Snell* in arguing that a party claiming unilateral mistake must show, as an essential element of its claim, that the mistake was known by, or induced by acts of, the other party. *See* 504 S.W.2d 397, 399 (Tex. 1973) ("A mistake by only one party to an agreement, not known to or induced by acts of the other party will not constitute grounds for relief."); *see also Smith-Gilbard v. Perry*, 332 S.W.3d 709, 713–14 (Tex. App.—Dallas 2011, no pet.) (same); *Zapatero v. Canales*, 730 S.W.2d 111, 114 (Tex. App.—San Antonio 1987, pet. ref'd n.r.e.) (same). We disagree. The case primarily cited by the *Johnson* Court, *Morris v. Millers Mutual Fire Insurance Co. of Texas*, stated merely that "[a] mistake by only one party to the agreement where it is not induced by the acts of the other party will *usually* not constitute grounds for relief." 343 S.W.2d 269, 271 (Tex. Civ. App.—Dallas 1961, no pet.) (emphasis added). This is not inconsistent with the Texas Supreme Court's pronouncement in *James T. Taylor & Son* that "equitable relief will be granted against a unilateral mistake when the conditions of remediable mistake [i.e., the four elements set forth *supra*] are present." 160 Tex. at 620. Accordingly, we conclude, consistent with a majority of appellate courts, that it is unnecessary for a party claiming unilateral mistake to prove that the other party had knowledge of the mistake or induced the mistake; rather, it is only necessary to establish the elements set forth in *James T. Taylor & Son* and its progeny. *Accord Toler*, 371 S.W.3d at 481–82; *Ross v. Union Carbide Corp.*, 296 S.W.3d 206, 220 (Tex. App.—Houston [14th Dist.] 2009, pet. denied); *City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 737 (Tex. App.—Fort Worth 2008, pet. dism'd); *Prudential Ins.*

6

*Co. of Am. & Four Partners LLC v. Italian Cowboy Partners Ltd.*, 270 S.W.3d 192, 205

(Tex. App.—Eastland 2008), *rev'd on other grounds*, 341 S.W.3d 323 (Tex. 2011);

*Kendziorski v. Saunders*, 191 S.W.3d 395, 407 (Tex. App.—Austin 2006, no pet.); *Kent*

*v. Holmes*, 139 S.W.3d 120, 132 (Tex. App.—Texarkana 2004), *rev'd on other grounds*,

221 S.W.3d 622, 626 (Tex. 2007); *Welkener*, 71 S.W.3d at 366.

## C.     Analysis

We first must determine whether the partnerships established their entitlement to

judgment as a matter of law on the basis of unilateral mistake.   *See* Tᴇx. R. Cɪv. P.

166a(c).  The partnerships' summary judgment motion alleges:

> The true intention of the agreements was to pass Edward's property on to
> his children and grandchildren.   Because Edward was mistaken that
> [Joshua] was his child and thus included him in these agreements as a
> limited partner with an ownership interest in this family property by
> mistake, Edward's mistake was of so great a consequence that to enforce
> these family partnerships with a non-family member as a limited partner
> would be unconscionable.  Edward's four biological children and his future
> grandchildren would be disinherited of at least a portion of the estate.  A
> non-heir would have the same standing and rights to the property as an
> heir.  This cannot be permitted when Edward never intended such a result
> and the partnership agreements expressly state the same.

The evidence attached to the motion included the partnership agreements, each of

which contain a section entitled "Purpose and Nature of Partnership," which state in

part:

> The purpose of the Partnership is to preserve the ranch properties we
> currently own as a single viable economic unit of sufficient size to be able
> to make a living from ranching for our selves [sic], our children and
> grandchildren.  Our purpose is to keep the ranch in one operation and to
> pass it on to our children and grandchildren without dividing the properties
> to allow one or more of our children the opportunity to ranch the property
> in partnership in the future. . . .

Each agreement also states that only direct descendants of Edward and Michele may

7

become additional limited partners.  The summary judgment evidence also contains an affidavit by Edward[3] stating that the purpose of the partnership agreements was to "pass on my property to my biological children, descendants and heirs," as well as an affidavit by Edward's brother-in-law, Joe Ellis, stating in relevant part:

> Throughout his marriage to Michele, Edward thought all the children in their household were his biological children.  He never indicated to me any suspicion that the five children were not his, until Michele filed for divorce in 2010.  At that time Edward became suspicious and had the last three children paternity tested.  When [Joshua] was determined not to be Edward's biological child, he expressed utter shock and disbelief.

We find that the partnerships met their initial burden to establish their entitlement to judgment on the basis of unilateral mistake.[4]  First, they established that enforcement of the agreement would be unconscionable.  *See James T. Taylor & Son*, 160 Tex. at

---

[3] Appellants contend on appeal that Edward's affidavit was conclusory and therefore not competent summary judgment evidence.  *See, e.g., Villacana v. Campbell*, 929 S.W.2d 69, 73 (Tex. App.—Corpus Christi 1996, writ denied) ("Summary judgment should not be granted when the cause of action depends on proof of facts not ordinarily subject to absolute verification or denial, e.g., intent, reliance, reasonable care, or uncertainty."); *see also Green v. Indus. Specialty Contractors*, 1 S.W.3d 126, 130 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (citing *City of Wilmer v. Laidlaw Waste Sys., Inc.*, 890 S.W.2d 459, 467 (Tex. App.—Dallas), *aff'd*, 904 S.W.2d 656, 660–61 (Tex. 1995)) ("[A]n objection that an affidavit is conclusory is an objection to the substance of the affidavit that can be raised for the first time on appeal.").  We need not address this issue because of our conclusion herein that summary judgment was proper based on evidence other than Edward's affidavit.  *See* TEX. R. APP. P. 47.1.

[4] We note that a unilateral mistake by one party, combined with knowledge of that mistake by the other party, is considered equivalent to a mutual mistake and may be rescinded without a showing of unconscionability.  *Davis v. Grammer*, 750 S.W.2d 766, 768 (Tex. 1988); *Victoria Bank & Trust Co. v. Brady*, 779 S.W.2d 893, 903–04 (Tex. App.—Corpus Christi 1989), *rev'd in part on other grounds*, 811 S.W.2d 931 (Tex. 1991); *see City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 735 (Tex. App.—Fort Worth 2008, pet. dism'd) ("The elements of mutual mistake are . . . (1) a mistake of fact, (2) held mutually by the parties, and (3) which materially affects the agreed-upon exchange.").  That is, what might otherwise be considered a unilateral mistake may make a contract voidable if the mistake on the part of one party is the result of "the inequitable conduct of the other party, such as the making of misleading or incorrect representations by one possessed of superior knowledge and in whom trust and confidence have properly been reposed."  *Damstra v. Starr*, 585 S.W.2d 817, 820 (Tex. Civ. App.— Texarkana 1979, no writ).  Here, however, there was no evidence adduced that Michele had knowledge of the identity of Joshua's father at the time the partnership agreements were executed.  Moreover, the partnerships did not argue mutual mistake in their summary judgment motion.  Accordingly, we may not affirm the summary judgment on these grounds.  *See* TEX. R. CIV. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal.").

8

620 (setting forth essential elements of unilateral mistake). "Unconscionable" is generally defined as "shockingly unfair or unjust." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 1286 (10th ed. 1996). However, Texas courts have held that the term carries no precise legal definition. *Besteman v. Pitcock*, 272 S.W.3d 777, 787 (Tex. App.—Texarkana 2008, no pet.); *Arthur's Garage, Inc. v. Racal-Chubb Sec. Sys.*, 997 S.W.2d 803, 815 (Tex. App.—Dallas 1999, no pet.). "Unconscionability is to be determined in light of a variety of factors, which aim to prevent oppression and unfair surprise; in general, a contract will be found unconscionable if it is grossly one-sided." *In re Poly-America, L.P.*, 262 S.W.3d 337, 348 (Tex. 2008) (orig. proceeding).[5] The partnership agreements, which were part of the summary judgment record, establish that keeping Joshua as a partner would, as the partnerships argue, "essentially disinherit[] Edward's true heirs of a portion of his estate and give[] a non-heir rights and privileges with respect to [the partnership] property." We believe this evidence is sufficient to establish that enforcement of the agreements as written would be unconscionable.

Second, the partnership agreements show that only "direct descendants" of Edward and Michele were eligible to become limited partners. The identity of the various limited partners was a material provision of the agreements. *See James T. Taylor & Son*, 160 Tex. at 620; *see also* BLACK'S LAW DICTIONARY 1066 (9th ed.) (defining "material" as "[h]aving some logical connection with the consequential facts" or "[o]f such a nature that knowledge of the item would affect a person's decision-making; significant; essential").

---

[5] The parties have cited, and we have located, no case law evaluating unconscionability in the context of a unilateral mistake defense.

Third, Ellis's affidavit—which states that "Edward thought all the children in their household were his biological children" and that "[w]hen [Joshua] was determined not to be Edward's biological child, he expressed utter shock and disbelief"—establishes that Edward's mistake occurred despite his exercise of ordinary care. *See James T. Taylor & Son*, 160 Tex. at 620.

Finally, the agreements themselves show that setting aside the agreements would not prejudice appellants except for the loss of the bargain. *See id.*

Because the partnerships established their entitlement to judgment as a matter of law on the basis of unilateral mistake, appellants were therefore under a burden to produce evidence raising a fact issue. Tex. R. Civ. P. 166a(c). In their response to the partnerships' motion and on appeal, Michele and Joshua do not dispute that: (1) enforcement of the contract as written, with Joshua as a limited partner, would be unconscionable; (2) Edward's mistake occurred despite his exercise of ordinary care; or (3) that setting aside the contract would not prejudice Michele and Joshua except for loss of the bargain. *See James T. Taylor & Son*, 160 Tex. at 620. Instead, appellants only challenge the materiality element of the partnerships' unilateral mistake theory. In particular, they note that the partnership agreements named as limited partners non-biological children of Edward other than Joshua—i.e., Michele and Edward himself—and they argue that this constitutes evidence creating a fact issue as to whether Edward's mistake "relates to a material feature of the contract." *See id.* They also claim that the inclusion of Michele and Edward as limited partners "constitutes summary judgment evidence of the relinquishment of [the partnerships'] alleged right to restrict

10

limited partner status to biological children of [Edward]."[6]

We disagree. The fact that Edward named himself and his then-wife as partners does not conflict with the stated goal of the partnerships—i.e., "to preserve the ranch properties we currently own as a single viable economic unit of sufficient size to be able to make a living from ranching for our selves [sic], our children and grandchildren"—and it does not constitute evidence raising a fact issue as to whether the identities of the limited partners was a material feature of the partnership agreements. Moreover, Edward's action in naming himself and Michele as partners does not constitute an "intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right" so as to support appellants' waiver argument. *See Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003).

Appellants further argue that there is a fact issue as to materiality because two of the children had judicially admitted that the partnerships were not, as Edward claimed, established for the benefit of the children. In particular, appellants point to a petition in intervention filed in the Werneckes' divorce proceeding by Jonathan Wernecke and Katie Wernecke, two of the Werneckes' children. In the petition for intervention, Jonathan and Katie asserted that their parents breached their fiduciary duties to them by, among other things, placing Jonathan and Katie's property in the partnerships and using royalties belonging to Jonathan and Katie in order to pay down community debts. Appellants claim that these allegations constitute "at least some evidence that the biological child requirement found in parts of the [partnership agreements] were not material." Again, we disagree. Even if we were to assume as true the allegations made

---

[6] This assertion apparently corresponds to appellants' "waiver and estoppel" defense as pleaded in their answer to the partnerships' suit and as asserted in their response to the summary judgment motion.

11

by Jonathan and Katie, that would say nothing about whether the identity of the limited partners is "a material feature of the contract." Appellants dispute that Edward intended only biological heirs to be limited partners, but they do not dispute that the purpose of the partnerships was to ensure that the property inherited by Edward would be preserved for particular, identifiable people. Appellants' evidence did not raise a fact issue as to the element of materiality.

Appellants failed to produce evidence raising a fact issue as to any of the elements of unilateral mistake. Accordingly, summary judgment in favor of the partnerships was proper. *See* TEX. R. CIV. P. 166a(c). We overrule appellants' issue on appeal.

### III. CONCLUSION

The trial court's summary judgment is affirmed.

_____
DORI CONTRERAS GARZA,
Justice

Delivered and filed the
3rd day of October, 2013.

12